425 So.2d 1050 (1982)
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF HAMILTON, Alabama, a corporation
v.
Jerry A. CAUDLE and Carolyn Caudle.
81-384.
Supreme Court of Alabama.
October 1, 1982.
As Modified on Denial of Rehearing December 22, 1982.
Rehearing Denied January 21, 1983.
John Self, Hamilton, for appellant.
William H. Atkinson of Fite, Davis & Atkinson, Hamilton, for appellees.
MADDOX, Justice.
The central question presented by this appeal is whether a statement made by a lender's agent to prospective home buyers that they had been approved for an FHA 235 loan, when they, in fact, had not been approved, is actionable, and whether a verdict of $22,500 rendered by the jury was proper and supported by the evidence.
Jerry and Carolyn Caudle, plaintiffs below, are husband and wife. In June of 1980, the appellees, desiring to purchase a house, went to appellant First Federal's place of business to inquire about a loan. The Caudles discussed the details of a home loan with Mr. Self of First Federal but learned that because of the high interest rates they could not afford the loan payments. The subject of an FHA (Federal Housing Administration) 235 loan was discussed. *1051 A 235 loan allows low income borrowers who qualify to have a portion of the interest on their home construction loan subsidized by the federal government. After a brief explanation of the FHA 235 loan program, Mr. Self agreed to process the papers to determine if the Caudles met the loan qualifications. This was the first FHA 235 loan First Federal had ever processed.
Several days later, on June 16, 1980, the Caudles met with their contractor at First Federal, where appellant First Federal prepared a contract between the contractor and the Caudles. The contractor, however, was instructed to delay construction until the loan was approved because the Caudles, without the loan, lacked the funds to pay him. That same day, the Caudles signed other papers, including one granting First Federal permission to verify Mr. Caudle's income with his employer. Shortly after June 23, 1980, Mr. Caudle's employer verified his 1979 income to First Federal as $15,477.24. Mrs. Caudle was not employed during the time the loan application was pending.
From the time of making the loan application until September 1980, Jerry Caudle phoned First Federal once a week to inquire about the status of the loan. Finally, during the middle of September 1980, Mr. Caudle phoned First Federal and talked with Mrs. Robertson. He informed her that if he had not heard from First Federal concerning the loan in two weeks, to forget about it. Mr. Caudle also phoned the contractor and reiterated what he had told Mrs. Robertson. Two weeks later, Mrs. Robertson phoned and Mr. Caudle spoke with her in a return call. She told him that "if [the Caudles] would, to wait on this loan, if [they] could qualify for it, it would be worth it." Construction on the house had not yet commenced.
In the early part of October, 1980, Mrs. Caudle testified that Mrs. Robertson of First Federal called her on the telephone to inform her that the loan had been approved and they could commence building the house. The contractor testified that Mrs. Robertson also telephoned him and told him that construction on the house could begin. (Mrs. Robertson testified that she did not recall specifically telling either Mrs. Caudle or the contractor to begin building the house; only that the loan was "conditionally approved.") Shortly thereafter, the contractor picked up the plans and specifications from First Federal and was given a telephone number in Birmingham to call when he was ready for footing inspection. Construction began around the middle of October 1980, and the house was completed and ready for final inspection on December 12, 1980. Some minor problems were corrected and final approval was given by the inspector around January 1, 1981. Only after the final inspection did the contractor learn of any problem with the Caudles' obtaining an FHA 235 loan.
In a telephone conversation with Mrs. Robertson and Mr. Self of First Federal around December 8, 1980, the Caudles first learned that their loan had not been approved. The apparent reason for the disapproval of the Caudles' loan application, as stated in December, was the purchase of a new car. Later, in February 1981, the Caudles were told they did not qualify for a 235 loan because Mr. Caudle made too much money in 1980. Unable to pay the contractor for the house, the Caudles were forced to obtain a 30-year Veteran's Administration (VA) loan at 14½ interest with monthly payments of $436.10.
At the trial, Mr. Charles Baker, a mortgage loan officer for Department of Housing and Urban Development (HUD), testified that an application for a 235 loan is submitted to HUD in a two-part process. A conditional commitment is issued approving the house plans, and after this, HUD evaluates the income eligibility of the borrower. Here, the conditional commitment was issued on October 8, 1980. The information from which HUD could determine the income eligibility of the Caudles was first submitted by First Federal on January 14,1981. Thus, no final determination could have been made by HUD as to the Caudles' eligibility for a 235 loan until after January 14, 1981. An amended income verification form was submitted in February 1981, *1052 showing Mr. Caudle's complete 1980 earnings.
The complaint, which contained seven counts, sought recovery upon the basis of negligence, wantonness, and fraud or willful misrepresentation, for the processing, approval and false statements made concerning an FHA loan application. The complaint sought compensatory damages of $25,000 and punitive damages of $61,400. The case was tried before a jury and at the close of plaintiff's evidence, defendant filed a motion for a directed verdict. The motion was denied. At the conclusion of all evidence, defendant refiled its motion for directed verdict, which was again denied by the court. The trial court instructed the jury on the law relative to counts 1, 2, 5 and 6, which alleged negligence and wantonness. The jury returned a general verdict. Finding that each of these submitted counts is amply supported by credible evidence, we affirm the judgment as against a failure of proof challenge. Aspinwall v. Gowens, 405 So.2d 134, 136 (Ala.1981).

I
Appellant First Federal contends that there was never any consideration paid for a loan commitment and that because the parties never executed a written agreement with regard to appellant's aiding the Caudles in this respect, any sort of parol agreement the parties may have had was void because of the requirements of the Statute of Frauds. The applicable provision of the Alabama Statute of Frauds as cited by appellant is Ala.Code 1975, § 8-9-2(5), which reads:
"Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, [is void] unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."
The Court finds no merit in First Federal's argument. First Federal agreed to process and handle the loan application for the Caudles. Irrespective of the fact that First Federal did not receive any consideration at the time the forms were filled out and filed with HUD, First Federal would have nevertheless received, after the loan was approved, an origination fee of 1% of the total mortgage amount for making the loan and also benefited as the lending institution making a government subsidized loan at the prevailing mortgage interest rates.

II
First Federal's argument that the verdict cannot be sustained because it was under no duty to service a 235 loan is also without merit. Although First Federal was under no duty to help procure a federally subsidized loan for the Caudles, once it voluntarily agreed to assist the Caudles, it was required to act with due care. McGaha v. Steadman, 410 So.2d 420, 421 (Ala.Civ.App. 1981); Dailey v. City of Birmingham, 378 So.2d 728, 729 (Ala.1979). The jury could have found from the testimony of Mrs. Caudle and the contractor that First Federal's employee told both Mrs. Caudle and the contractor that the FHA 235 loan had been approved and that construction of the Caudle home could commence; and the jury could have further found that it was clear or should have been clear to First Federal's employee, at that time, that the commitment received from HUD was merely "conditional" and not final. We recognize that First Federal's employee testified that she told both the contractor and Mrs. Caudle that the commitment was only conditional; however, that conflict in the testimony was resolved by the jury in the Caudles' favor.
The evidence was sufficient from which the jury could have concluded that the Caudles' desire to build a home was predicated on their receiving a low interest loan which they could afford. Testimony indicated that had the Caudles obtained an FHA 235 loan, monthly payments would have been $197. The jury could have found that the Caudles were forced to take a loan at the prevailing rate of interest and monthly payments of $436.10, when First Federal informed them, after the house was completed, that the FHA loan had not been *1053 approved. Consequently, the general verdict of $22,500 delivered by the jury is supported by the facts of this case. Therefore, the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
ORIGINAL OPINION MODIFIED: APPLICATION FOR REHEARING OVERRULED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.