The question presented by this appeal is whether the trial court's granting of summary judgment on behalf of two lending institutions, and entering a final judgment pursuant to the provisions of Rule 54 (b), A.R.Civ.P., was in error. We affirm.
In August 1980, William H. Brasher went to First Alabama Real Estate Financing, Inc. (Real Estate Financing), and met with Hilton H. Flowers, who was a vice-president of Real Estate Financing and branch manager of the Riverchase, Alabama, office.
Brasher explained to Flowers that he was building a house on property owned by his wife's parents and that he needed a commitment letter to take to the bank in order to obtain a construction loan. Based on the financial information furnished by Brasher, Flowers issued, on behalf of Real Estate Financing, a "take-out" commitment letter dated August 19, 1980, addressed to Ron Currin of First Shelby National Bank, the construction lender.
The commitment letter issued by Real Estate Financing, by which Real Estate Financing committed itself to pay out the Brasher construction loan, was in the amount of $55,000, and committed Real Estate Financing for a period of one year, or longer, at Real Estate Financing's option, and at the prevailing interest rate on the date of closing. The letter contained other conditions: that the purchaser must be satisfactory to Real Estate Financing; that proper title and hazard insurance must be submitted; that VA (Veterans Administration) or FHA (Federal Housing Administration) compliance inspection reports and an appraisal of at least $73,350 must be submitted, and that closing be concluded by August 19, 1981.
On September 16, 1980, Flowers left the employ of Real Estate Financing and went to work for Charter Mortgage Company (Charter). After discussing the status of several files with Walter Kennedy, senior vice-president of Real Estate Financing, Flowers took some of those files with him, one of them being the Brasher file.
Real Estate Financing cancelled its "take-out" commitment on September 24, 1980, by a letter to First Shelby National Bank, stating that the commitment had been transferred to Charter, although the "take-out" letter contained no provision for its transfer or cancellation. There was no testimony contained in the depositions indicating that the Brashers requested or consented to the transfer by Real Estate Financing.
The Brashers stated in their depositions that when they contacted Flowers at Charter, subsequent to his leaving Real Estate Financing, he told them to stay with him and Charter. They admitted, however, that Flowers did not give them a written commitment for a loan from Charter, and that Flowers did not otherwise guarantee them permanent financing, nor did they ask Charter for a loan commitment.
Charter informed the Brashers sometime in February or March of 1981, that it had been unsuccessful in obtaining a source of permanent financing. Prior to receiving this information from Charter, the Brashers had not contacted any other financial institutions to seek permanent financing for their house and had not made a demand on Real Estate Financing to honor its commitment letter.
Following an exchange of letters between Real Estate Financing, an attorney for the Brashers, and First Shelby National Bank, concerning Real Estate Financing's obligations under the terms of the "take-out" letter of August 19, 1980, Real Estate Financing, after requiring the Brashers to complete a second loan application, extended the terms of the "take-out" letter ten days and agreed to close the mortgage loan in accordance with the terms of the commitment. This fact was conveyed to the *Page 684 
Brashers and their attorney both orally and in writing. Although all the loan documents were prepared and ready for execution and a loan closing was scheduled at the offices of Real Estate Financing's attorneys, the Brashers failed to appear to close the loan. The Brashers later stated that they elected not to close the loan because they concluded that they could not make payments on the Real Estate Financing loan and also make payments on the construction loan interest at First Shelby National Bank, which interest amounted to nearly nine thousand dollars. First Shelby National Bank, the construction lender, foreclosed on the house on August 24, 1981. The Brashers filed suit against Flowers, Real Estate Financing, and Charter. We first consider the appeal as it relates to Real Estate Financing.
The Brashers contend that, by cancelling the "take-out" letter without their consent, and by failing to obtain long-term financing, Real Estate Financing never manifested its readiness, willingness, and ability to finance the loan pursuant to the terms of the written loan commitment. The record indicates otherwise, however.
Real Estate Financing issued its "take-out" letter to First Shelby National Bank on behalf of the Brashers on August 19, 1980. Real Estate Financing did write First Shelby National Bank stating that the loan commitment to the Brashers was being terminated because the Brashers' file had been transferred to Charter. The facts show that at no time did Real Estate Financing make any loan commitment to the Brashers other than the one contained in the August 19, 1980, letter.
The evidence further shows that when Real Estate Financing was requested by the Brashers to honor its original commitment, it expressed its readiness, willingness, and ability to close the loan called for by the August 19, 1980, agreement, provided the Brashers complied with the conditions of that loan commitment. Although the Brashers did not furnish Real Estate Financing with an appraisal, Real Estate Financing nevertheless extended the expiration date of the loan commitment and attempted to schedule a closing of the loan for the Brashers, who eventually elected not to close.
Even though Real Estate Financing requested the Brashers to complete a second loan application, because the Brasher file had been transferred to Charter, Real Estate Financing informed the Brashers that it would close the loan pursuant to the terms of the original commitment, and it was the Brashers' decision not to close; therefore, under these circumstances, we conclude the trial court acted properly in granting summary judgment as to the breach of contract claim against Real Estate Financing, because there was no genuine issue as to any material fact and Real Estate Financing was entitled to judgment as a matter of law. Houston v. McClure, 425 So.2d 1114, 1116 (Ala. 1983).
We now consider the appeal as it relates to Charter. The Brashers contend that the failure of Charter to provide permanent financing amounted to a breach of contract. Their counsel asserts that ". . . even if Charter was under no obligation to obtain financing for the Brashers, once they undertook to do so, by actions of their agent, Flowers, having the file transferred to Charter, they assumed the responsibility of Real Estate Financing and were under an obligation to carry through with what they had initiated." Counsel cites the case of First Federal Savings Loan Ass'n v.Caudle, 425 So.2d 1050 (Ala. 1982), as authority for this proposition. We do not believe that First Federal Savings Loan Ass'n v. Caudle, supra, is appropriate. There, bank customers brought an action against a lending institution and claimed that it was guilty of negligence, wantonness, and fraud by willful misrepresentation, in the processing, and approval of, and false statements made concerning, an FHA loan application. The Court upheld a general verdict in favor of the customers, ruling that once the lending institution agreed to assist the customers, it was required to act with due care. InCaudle, there was evidence showing that the lender had *Page 685 
contacted both the customer and the customer's contractor to inform them that the low cost loan had been approved and that construction on the house could commence. Not until the construction on the house had been completed did the lender inform the customers that, in fact, the low-cost loan had not been approved, whereupon the customers were forced to obtain a loan at a higher rate of interest.
In the instant case, the Brashers admitted, while being deposed, that there was never any oral or written guarantee by Flowers on behalf of Charter to obtain long-term mortgage financing for their house. Despite the lack of a written or verbal guarantee, Charter or its agents attempted, in good faith, to obtain financing for the Brashers' house from several sources, but were unsuccessful. There is no evidence in the record to suggest that Charter or its agents did not put forth their best efforts to obtain the financing that the appellants desired. Indeed, the facts indicate that because of the existing economic conditions, funds for long-term mortgages were scarce.
Because the appellants offered no evidence to support the application of the Caudle rationale in this instance, and because appellants failed to provide evidence of the existence of an agreement on the part of Flowers or Charter to provide the appellants with financing, we conclude that summary judgment for Charter was proper. See Holliyan v. Gayle,404 So.2d 31, 34 (Ala. 1981).
In addition to alleging a breach of contract, appellants also allege what could be characterized as a cause of action for fraud by Charter and Flowers. The applicable statute of limitations for fraud allegedly committed by an agent is one year. Code 1975, §§ 6-2-3 and 6-2-39 (a)(5), (7).
The Brashers filed suit in this case on September 23, 1982. The facts show that on March 27, 1981, at least eighteen months before they filed suit, their attorney wrote in a letter to Walter Kennedy, senior vice-president of Real Estate Financing, that Charter was unable to obtain financing for their house. This uncontroverted evidence shows that they were aware at least eighteen months prior to the filing of their lawsuit, that Charter would be unable to obtain financing for them. Consequently, under the circumstances, any claim they may have had for fraud is barred by the one-year statute of limitations.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.