This is an appeal of a summary judgment entered in favor of the defendants, Realty Champion and First Union Mortgage Corporation ("First Union"). We affirm in part, reverse in part, and remand.
The issues are whether there was a scintilla of evidence that Realty Champion, through its agent, misrepresented material facts about the condition of residential real estate it sold; whether First Union owed a duty to the Williamsons to properly inspect and appraise the property; and whether there was a scintilla of evidence that First Union fraudulently misrepresented the condition and value of the property.
The facts, taken most favorably for the plaintiffs, appear as follows:
The plaintiffs, the Williamsons, were interested in buying a house and some land in St. Clair County. They contacted the homeowner's real estate agent, Sandy Gunter, who was an agent for Realty Champion. The Williamsons and Gunter met and went through the house, along with the owner. The Williamsons were at the house for over an hour, but did not go underneath the house or go onto the roof for an inspection. The Williamsons allege that during this initial examination Gunter told them that the house was "very well built." They subsequently entered into a contract with the owner, but, prior to closing, the Williamsons again inspected the house. On this occasion, the Williamsons went through each room of the house. As before, they did not go under the house or onto the roof to inspect the condition of the house.
In order to get favorable interest rates and a more thorough inspection, the Williamsons decided to seek an F.H.A. loan. Gunter allegedly recommended that the Williamsons secure their loan through Cameron Brown (predecessor to First Union). The Williamsons contacted First Union's representative regarding a F.H.A. loan because they felt such a loan would require a complete inspection of the house. The Williamsons allege that the First Union representative, Debbie McKnight, informed them that such an inspection would be comprehensive. The Williamsons contracted with First Union to allow First Union to apply for approval of the F.H.A. loan. Two appraisals were made of the home, both by an F.H.A.-approved appraiser from First Union. The second appraisal valued the home several thousand dollars higher than the first appraisal.
The Williamsons alleged that First Union did not send them the F.H.A. appraisal and inspection report, as the Williamsons say they had requested, and that they subsequently informed both Gunter and First Union that they intended to pursue their loan through South State Mortgage Company. Gunter allegedly talked the Williamsons out of using South State Mortgage Company because South State Mortgage Company's F.H.A. inspector, the plaintiff alleged, would have done a more thorough inspection, which would have prevented the sale. The Williamsons, consequently, continued using First Union. Prior to the appraisals of the property, the Williamsons signed a document authorizing the F.H.A. appraisal. The document contained a disclaimer, which read:
 "The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the property. The purchaser should satisfy himself/herself that the price and condition of the property are acceptable."
The loan arrangements were completed on October 14, 1986, and the seller was paid the purchase price that same day. After moving into the house, the Williamsons allegedly became aware of the following defects: the floors sagged; heating ducts had been removed and covered with tin; kitchen cabinets were coming loose from the walls; underneath the house, a concrete block and a discarded water heater supported the floors; there was poor drainage around the house; plumbing emptied into an open space; there was an unrepaired hole in the roof; the wood trim of *Page 1002 
the house had suffered substantial termite damage; the vent motor over the stove functioned improperly; the septic tank did not function properly; the floor around the hall bathroom was rotted; and the dining room floor was badly warped.
The Williamsons filed suit on April 10, 1987, against Realty Champion, alleging that its agent had made reckless misrepresentations about the quality of the house. They also sued First Union for damages based on negligent inspection/appraisal, alleging that its appraiser had failed to discover the alleged defects and alleging reckless misrepresentation about the quality of the house. Summary judgment was entered for Realty Champion and First Union.
For a trial court to grant a motion for summary judgment, "it must find that there is no genuine issue of a material factand that the movant is entitled to a judgment as a matter of law." Booth v. United Services Automobile Ass'n,469 So.2d 1281, 1282 (Ala. 1985); Rule 56, A.R.Civ.P.
The Williamsons allege the following: that they told Gunter that they wanted to get an F.H.A. loan because of the thorough inspection that they believed such a loan would require; that Gunter informed the Williamsons that the house was "very well built"; and that when the Williamsons suggested changing from First Union to another mortgage company, Gunter talked them out of it because of the stringent F.H.A. inspection the other company's inspector would have performed.
In Alabama, the rule of caveat emptor applies to the sale of used residential real estate. Ray v. Montgomery, 399 So.2d 230,233 (Ala. 1980). However, if the agent is questioned directly about specific defects or if the agent has knowledge of specific defects that affect health or safety and the defect is not known to or readily observable by the buyer, the agent has a duty to disclose and is liable for damages for nondisclosure.Fennell Realty Co., v. Martin, 529 So.2d 1003, 1005 (Ala. 1988). There is no evidence that Gunter was asked about specific defects in the house, nor was there evidence that Gunter had knowledge of any dangerous defects and concealed such defects from the Williamsons. With regard to Gunter's statement that the house was "very well built," we have held that general statements such as this are not evidence of fraud because they are "statements of the seller's opinion and not of fact." Ray v. Montgomery, 399 So.2d 230, 232 (Ala. 1980). Therefore, Realty Champion was entitled to a judgment as a matter of law. Id. The summary judgment is affirmed as to Realty Champion.
First Union was under no duty to aid the Williamsons in obtaining an F.H.A. loan. First Federal Savings Loan Ass'n ofHamilton v. Caudle, 425 So.2d 1050, 1052 (Ala. 1982). However, once First Union agreed to help them procure the loan, it assumed a duty to act with due care. Id. The fact that the Williamsons both signed an H.U.D. disclaimer making them responsible for inspection of the property does not absolve First Union of this duty. Once First Union went beyond what was required, First Union created a "special relationship" with the Williamsons that existed independently of the H.U.D. disclaimer. See, Rudolph v. First Southern Federal Savings Loan Ass'n, 414 So.2d 64, 67 (Ala. 1982).
Having determined that First Union owed the Williamsons a duty to act with due care in processing their F.H.A. loan, we now must decide the remaining issue: whether the plaintiffs presented a scintilla of evidence that First Union negligently inspected or appraised the house.
In his deposition, William Williamson stated the following regarding a conversation with First Union's representative, Debbie McKnight:
 "Q. Tell me everything that you told her about the FHA inspection, what you expected, what you wanted?
 "A. I told her that I knew that FHA inspection, the reason we felt comfortable going FHA, the FHA inspector could cover the house from top to bottom, and that's why we were so relieved to go FHA.
"Q. Who did you tell that to? *Page 1003 
"A. Debbie McKnight.
"Q. When did you tell her?
"A. When we first made application for the loan.
"Q. What was her response?
"A. She said, 'Yes, that's right.' "
Viewed in a light most favorable to the Williamsons, it could be concluded that both parties were anticipating that the F.H.A. inspection would accurately inform them about the condition of the house, and, thus, that the Williamsons properly relied on First Union's F.H.A. appraiser, James Nolen.
Nolen's second "Residential Appraisal Report," dated September 12, 1986, indicated that the plumbing and floors were in good condition and that the roof was in "average" to "good" condition. His report also stated that there was no evidence of termite damage. His estimate of the value of the house was in excess of the purchase price. Nolen's analysis clearly conflicts with the Williamsons' testimony.
Based on this information, the Williamsons presented a scintilla of evidence that First Union's inspection/appraisal of the property was negligently performed.
Finally, the conduct of First Union's representatives could lead a jury to believe that the quality of the F.H.A. appraisal and inspection, as well as the quality of the house, was fraudulently misrepresented to the Williamsons. Therefore, we reverse the summary judgment as to First Union and we remand the case.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.