This case involves plaintiff Jolene Ivey's purchase of used residential property, which she later discovered to have structural damage. She appeals from a summary judgment for the defendants, John Frankle; Mortgage Assistance Corporation ("MAC"); Montgomery Metro Realty, Inc. ("Metro"); Morgan Engineering, Inc. ("Morgan"); and Dan Stallings. We affirm.
On March 11, 1991, Ms. Ivey filed a complaint alleging that Frankle, MAC, and Metro had failed to disclose the true condition of a house that she purchased from MAC. Frankle is a real estate agent for Metro; Frankle and his wife own MAC; MAC had purchased the house for resale. Morgan is an independent engineer hired by Frankle to inspect the house before MAC purchased it. Ms. Ivey purchased the *Page 1279 
house through Frances Walls, an agent for Metro.[1]
Ms. Ivey sought damages, or, in the alternative, the rescission of the contract, alleging fraud. Her complaint also alleged that she was a third-party beneficiary of a contract between Morgan and the other defendants, and she sued Morgan for its breach. She later amended her complaint to add Dan Stallings, the qualifying broker under whom Frankle is licensed, as a defendant; she alleged that Metro and Stallings had been negligent and were liable, under Alabama Code 1975, § 34-27-34, for Frankle's alleged misconduct. The defendants answered by denying liability; Metro and Stallings also pleaded the statute of limitations. Frankle and MAC subsequently cross-claimed against Berrey Morgan and Morgan Engineering, alleging that, in purchasing the house and reselling it to Ivey, they had relied upon Berrey Morgan's opinion concerning the condition of the house.
At the completion of discovery, the defendants moved for a summary judgment. On May 7, 1992, the trial court entered a summary judgment for Frankle, MAC, Metro, and Stallings. On June 18, 1992, the trial court entered a summary judgment for Morgan. Ms. Ivey appealed from the judgments as they relate to her claims of fraudulent suppression, negligence, breach of fiduciary duty, and statutory liability under Alabama Code 1975, § 34-27-34.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc.,475 So.2d 539, 541 (Ala. 1985); Ryan v. Charles Townsend Ford,Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the "substantial evidence rule" (§ 12-21-12, Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989).
We conclude that the judgments of the trial court are due to be affirmed. First, as to the claim of fraudulent suppression, it is the rule in Alabama that the seller of a house has no duty to volunteer knowledge; however, when a direct inquiry is made of him or her, the seller has a duty to respond honestly.Leatherwood, Inc. d/b/a Coldwell Banker First Ozark Realty v.Baker, 619 So.2d 1273 (Ala. 1992). Under this rule, "if the buyer specifically inquires about a material condition concerning the property, the seller has an obligation to disclose known defects" in regard to the condition inquired about. Commercial Credit Corp. v. Lisenby, 579 So.2d 1291, 1294
(Ala. 1991). Ms. Ivey contends that she made such a specific inquiry in asking about some loose dirt in the backyard. The answer given to Ms. Ivey, through her agent Walls, was, by her own testimony: "[T]hey said the dirt was because of some work that they had done around there, and that that was — it was just left." She testified that she made no further inquiry. There is no evidence that this was not a truthful response. This casual inquiry about loose dirt does not constitute a specific inquiry about a material condition.
The evidence further reflects that on the date of closing Frankle gave Ms. Ivey a letter describing the house as built on "prairie soil" and stating that houses built on such soil have a greater chance for structural cracking if the moisture content *Page 1280 
of the soil is allowed to vary between wet and dry spells. The letter stated that a moisture control system had been installed to prevent drying out and subsequent movement of prairie soil during dry spells.[2] Ms. Ivey signed to acknowledge receipt of Frankle's letter, to which was attached a HUD report and a letter from Morgan stating that vertical movement of the foundation had been brought under control by installation of a moisture control system, and that it should be stressed to any purchaser that water must be maintained in the moisture control system at all times to prevent drying out of the subgrade during dry spells. The evidence reflects that Frankle showed Ms. Ivey the moisture control system and taught her how to operate it. Although Ms. Ivey testified that she had lunch with her agent and with Frankle, she stated that she asked no questions about the letter or about the house, and she went ahead with the closing.
Ms. Ivey testified that she used the moisture control system as Frankle had demonstrated, until she received her first water bill. She thought the bill was excessive and decided to operate the system manually, turning it on and off as she deemed necessary. She further testified that in December 1989, the water in the main pipe leading into the system froze and that pipe burst, and that she decided not to replace the pipe, but instead to connect a hose to the faucet and fill the system with water until she considered it full. In September 1990, after the worst dry season since 1860, Ms. Ivey began experiencing problems with the house. She noticed that the fireplace was pulling away from the wall and that the eaves were buckling, problems she admits were not present when she purchased the house.
As to the claim of negligence, the judgment is due to be affirmed on the authority of Harrell v. Dodson, 398 So.2d 272,277 (Ala. 1981); Chatman v. City of Prichard, 431 So.2d 532,533 (Ala. 1983); Bay Shore Properties, Inc. v. Drew Corp.,565 So.2d 32 (Ala. 1990). The judgment is also due to be affirmed as to the claim of breach of fiduciary duty, because there is no evidence that Frankle supervised Walls or that a fiduciary relationship existed between Frankle and Ivey. Finally, the judgment is due to be affirmed as to the broker, Stallings. SeeCentury 21 Action Realty II v. Smith, 533 So.2d 626
(Ala.Civ.App. 1988).
The judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] Frances Walls was not a defendant in the case.
[2] The letter was in response to Dan Stallings's memorandum telling Frankle to disclose in writing to the purchaser that he was the owner/agent; that the house was located in an area where cracks are prevalent; that cracks had been discovered in the house; and that work had been done.