On July 27, 1990, Billy Whorton and Mary Sue Whorton bought a used house from C S Family Credit of Alabama Inc. ("C 
S"). On the same day, Mildred Roberts bought the house next door from C S. Both the Whortons and Roberts were shown the properties by Russell B. Taylor, an agent for C S. Both the Whortons and Roberts had to leave their houses because of defective septic tanks.
On July 12, 1991, the Whortons sued C S, David Keiffer (its branch manager at the time they bought the house), and Russell B. Taylor, complaining of matters arising out of the sale of the house, and alleging (1) fraud and misrepresentation; (2) suppression of material facts; (3) fraudulent deceit; and (4) breach of express or implied warranties. On January 23, 1992, Mildred Roberts sued the same defendants, making similar allegations concerning her house. The plaintiffs filed a motion to consolidate the two cases, which was granted on July 23, 1992. On August 6, 1992, C S moved for a summary judgment, which was entered on October 7, 1992. The plaintiffs appeal. We reverse and remand.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the *Page 1296 
evidence in a light most favorable to the nonmovant. SeeTurner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala. 1985);Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala. 1981). Rule 56 is read in conjunction with the "substantial evidence rule" § 12-21-12, Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the nonmovant must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). Viewing the evidence in the light most favorable to the plaintiffs and giving them the benefit of all favorable inferences that can be drawn from the evidence, we find it clear that a genuine issue of material fact existed as to whether the defects were ever repaired, and, therefore, as to whether a duty was owed by the defendants to the plaintiffs.
The record reflects that the real properties involved in this action were mortgaged to C S in February 1989. Shortly thereafter, C S foreclosed and took possession of the property; these two properties were part of a parcel of land with three houses on it. C S discovered that the houses were in partial disrepair, although renovation had been contemplated when the original mortgage had been taken. C S's branch manager, David Keiffer, secured the services of various contractors to perform those repairs and prepare the houses for sale. As those repairs were being initiated, C S was notified by a neighbor that one of the septic tanks had caused problems in the past. C S then retained John Sanford, a local contractor. C S contends that Sanford cleaned out the septic tank at the Whorton house and the tank at the Roberts house, verified that the field lines were operational, and made other necessary repairs at that time.
In December 1989, Keiffer left the employment of C S and was replaced by Russ Taylor, who was given the task of selling the property. In July 1990, Taylor met with the plaintiffs and showed them the subject properties. After the initial inspection, the plaintiffs did not revisit the properties, nor did they have an independent inspection of the properties conducted before purchasing them, although they were aware that the properties were used. The plaintiffs lived in the houses from July 1990 until October/November 1991.
The plaintiffs contend that C S suppressed the fact that the septic tanks were defective. The Madison County Health Department told the plaintiffs that the septic tanks at both residences were discharging raw sewage onto the ground and that they would have to repair the septic systems to avoid legal action. There is no dispute that the discharge of raw sewage onto lawns and into an occupied dwelling constitutes a health hazard. There is no dispute that C S had knowledge of the defective condition of the septic tanks as early as June 1989. According to the affidavits of Glen Beavers and Joe McBride, the Health Department gave C S notice of the defects in July 1989. There is, however, conflicting testimony as to whether the defects in the septic tanks were ever repaired.
In his affidavit, Glen N. Beavers[1] attested to the following:
 (1) C S was given notice in July 1989 that the septic systems were discharging raw sewage onto the grounds;
 (2) C S promised that "the problem would be taken care of";
 (3) so far as Beavers knew, those defects or problems were never repaired; and
 (4) the problems that existed after the Whortons and Ms. Roberts purchased the houses were essentially the same as the problems existing in July 1989. *Page 1297 
Joe Wayne McBride[2] attested to the following:
 (1) He first discovered the problem with the septic systems in July 1989;
 (2) he advised C S of those problems and was assured that they would be corrected;
 (3) he advised C S that repair work could not begin until the appropriate permits were issued by his office;
(4) no repair permits were obtained by C S; and
 (5) the problems with the septic systems still existed when the Whortons and Ms. Roberts purchased the houses.
In her deposition, Ms. Roberts stated that she first noticed the septic tank running over approximately two weeks after she purchased the house, immediately after the first rain. Mr. Whorton testified that sewage began to leak into his house soon after the purchase. On the other hand, C S claims that Sanford cleaned out each tank, verified that the field lines were operational, and made whatever other repairs were necessary, and claims that, after completing these repairs, Sanford was contacted by a Madison County Health Department official, who inspected the job site. C S says that that official indicated that all repairs seemed satisfactory and were in accordance with the requirements of the building permit that Sanford had previously secured. These conflicting affidavits create a fact question that must be resolved by the factfinder.
In Alabama the seller of used residential real estate generally has no duty to volunteer knowledge; however, when a direct inquiry is made of him or her, the seller has a duty to respond honestly. Leatherwood, Inc., d/b/a Coldwell BankerFirst Ozark Realty v. Baker, 619 So.2d 1273 (1992); Ivey v.Frankle, 619 So.2d 1277 (Ala. 1993). However, if the seller, or the seller's agent, is questioned directly about specific defects, or if the seller or the agent has knowledge of specific defects that affect health or safety and the defect is not known to or readily observable by the buyer, the seller or the agent has a duty to disclose and is liable for damages for nondisclosure. Fennell Realty Co. v. Martin, 529 So.2d 1003,1005 (Ala. 1988). The rule is:
 "[I]f the agent is questioned directly about specific defects or if the agent has knowledge of specific defects that affect health or safety and the [defects are] not known to or readily observable by the buyer, the agent has a duty to disclose and is liable for damages for nondisclosure. Fennell Realty Co. v. Martin, 529 So.2d 1003, 1005 (Ala. 1988)."
Williamson v. Realty Champion, 551 So.2d 1000, 1002 (Ala. 1989). (Emphasis added.) We have held that whether the seller or the seller's agent owes a duty to disclose is a question for the factfinder to decide. Lowder Realty, Inc. v. Odom,495 So.2d 23, 26 (Ala. 1986).
The plaintiffs claim that Taylor made the following statements about the houses: that the houses were "completely redone," "renovated and redone," and, as a result, were "good houses," and that they were "in real good shape" and "liveable." Whether such statements are statements of opinion or of fact is a question for the factfinder. See, e.g.,Boswell v. Coker, 519 So.2d 493, 496 (Ala. 1987), and Davis v.Brown, 513 So.2d 1001, 1005 (1987). In Davis, we said:
 "Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties. The mere form of the representation as one of opinion or fact is not in itself conclusive, and in cases of doubt the question should be left to the jury." *Page 1298 
513 So.2d at 1005 (quoting Fidelity Casualty Co. of New Yorkv. J.D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669
(1943)).
Because there exist genuine issues of material fact, the trial court erred in entering the summary judgment for the defendants. Accordingly, that judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, HOUSTON, and KENNEDY, JJ., concur.
[1] Beavers is a public health environmentalist employed by the Madison County Health Department, and he was so employed in July 1989. He had received the initial complaints about the raw sewage problems, and, as a result, had contacted the owners of the houses and told them that they were in violation of Ala. Code 1975, § 22-26-1, et seq.
[2] McBride is a public health environmentalist with the Madison County Health Department, and he was so employed in July 1989. He received the initial complaints about the raw sewage problems and informed Keiffer about them because C S held the mortgage on the property.