## CIRCUIT COURT OF FAIRFAX COUNTY

Douglas W. Ell
and Sharon Scott-Ell

v.

William E. Moss
and Builda-Vision, Inc.

July 10, 1995

Case No. (Chancery) 131226

By Judge Jane Marum Roush

This matter came on for a bench trial on November 7, 8, 9, and 10, 1994. Counsel submitted their closing arguments in writing. The Court has now carefully reviewed the pleadings, the exhibits entered into evidence, the briefs, and closing arguments of counsel and considered the testimony of the witnesses. For the reasons stated below, judgment will be entered in favor of the Defendants on all counts of the Bill of Complaint.

### Facts

The facts of this case will be briefly summarized. The plaintiffs are Douglas W. Ell and his wife, Sharon Scott-Ell. The defendants are William E. Moss and Builda-Vision, Inc.

In late 1986, Mr. and Mrs. Ell wanted to purchase a new house located at 1408 Grady Randall Court, McLean, Virginia, also known as Lot 33, Chain Bridge Woods (the "House" or the "Property"). Mr. Moss is a builder. He showed them the House on several occasions. The facts are in dispute as to whether he told them that he built the House, as the Plaintiffs contend, or whether he told them that Builda-Vision, a corporation in which he was a 50% shareholder, an officer and a director, built the House,

as Mr. Moss contends. In any event, the $480,000.00 offering price of the House was too high for the Ells to afford comfortably. Mr. Moss said he could "get [the Ells] in" the House. Mr. Moss said that the House was owned by Casa Corporation, another corporation in which Mr. Moss was a principal.[1] The Property was the sole asset of Casa Corporation. Mr. Moss proposed that, instead of purchasing the Property, the Ells purchase the stock of Casa Corporation from him and thereby acquire the House (subject to its existing mortgage) without paying recording taxes and other closing costs associated with a real estate transfer with purchase money financing. A pre-printed sales contract for the purchase of real property was prepared by Mr. Moss for the transfer of the Property to Mr. and Mrs. Ell. At the bottom of the contract, the language was added: "Property to be conveyed by sale and transfer of Casa Corporation to Purchasers." Plaintiffs' Ex. # 11. Mr. Ell, who is a practicing attorney, agreed to the restructuring of the transaction as the purchase of the stock of Casa Corporation, rather than the purchase of the fee simple interest in the Property.

The parties went to closing on February 20, 1987. The parties disagree about what was closed on that date. The Ells contend they closed on the purchase of the House; Mr. Moss contends that the Ells closed on the purchase of all of the stock of Casa Corporation, the sole asset of which was the Property. No deed changed hands; the Property remained titled in the name of Casa Corporation. Mr. Moss resigned as an officer and director of Casa Corporation and executed a document assigning all his right, title, and interest in Casa Corporation to the Ells. Mr. Moss executed an agreement whereby he agreed to indemnify the Ells from and against claims against the Casa Corporation arising before closing. The $480,000.00 purchase price was paid as follows: $40,000.00 in cash was paid at closing, the existing $371,300.00 mortgage on the Property remained a lien on the Property and an obligation of Casa Corporation, and the balance was paid by a $68,700.00 note secured by the lien of a second deed of trust on the Property from the Casa Corporation to Mr. Moss and his wife. (Mr. Ell executed the note and the second deed of trust in his capacity as the new president of Casa Corporation.) The Ells took possession of the House on February 22, 1987, two days after closing.

After the February 20, 1987, closing, Mr. and Mrs. Ell opened a bank account in the name of the Casa Corporation and made their mortgage

---

[1] Builda-Vision acquired the lot on which the House was built in 1983. Builda-Vision deeded the Property to Casa Corporation in May, 1986.

payments from that account. About one year after closing, on April 1, 1988, they refinanced both the first and second deeds of trust on the Property and conveyed the Property from the Casa Corporation to themselves by Deed of Gift. Plaintiffs' Ex. # 15.

In May, 1989, following a rainstorm, the rear basement wall of the House cracked, bowed out, and was in danger of collapsing. The House was briefly condemned by Fairfax County until repairs could be made. Henry Lucas, an engineer called as an expert on behalf of the Ells, testified that the damage to the back basement wall was the direct result of the improper installation of a drainage system behind the House[2] and improper soil compaction in the rear of the House. A second expert, Mr. John Alderman, testified that the drain pipe was faulty and that one of the downspouts of the House was improperly installed. Further evidence was adduced that the soil was improperly compacted near the driveway, causing the driveway to be replaced. Plaintiffs' experts testified that the House was not constructed in a workmanlike manner so as to pass without objection in the trade. Mr. and Mrs. Ell expended over $138,395.00 to repair the House.

The Plaintiffs filed a Bill of Complaint against Mr. Moss, Mrs. Moss, Builda-Vision, and various of Mr. Moss's affiliated corporations (other than Casa Corporation) on December 27, 1989. The case was nonsuited, and the present case was refiled on August 23, 1993, within six months of the nonsuit. Accordingly, December 27, 1989, is the date on which any statute of limitations or the Statute of Repose was tolled. Code § 8.01-229(E)(3). The Plaintiffs' claims against all but Mr. Moss and Builda-Vision were nonsuited or dismissed prior to trial.

Count I of the Bill of Complaint seeks damages from Mr. Moss (individually and as the alter ego of Builda-Vision) and Builda-Vision resulting from their negligent construction of the House. Count II of the Bill of Complaint seeks damages against Mr. Moss (individually and as alter ego of Casa Corporation) for breach of the statutory warranties for new house construction under Va. Code Ann. § 55-70.1. Count III seeks damages from Mr. Moss and Builda-Vision for failing to disclose to the Ells that dangerous condition in the House. Count IV seeks damages from Mr.

---

[2] Apparently, an underground "french drain" designed to direct water away from the House was wrapped in impermeable plastic with the result that water pooled behind the house, causing the rear basement wall to bow.

Moss for fraud in failing to disclose to the Ells the defects in the construction of the House.

Count IV, seeking specific performance of an agreement to adjust a property line, and Count V, seeking removal of a cloud on the Plaintiffs' title to the Property, were nonsuited on the morning of the first day of trial.

I will consider each of the remaining counts of the Bill of Complaint in order.

### Count I: Negligence

In Count I, the Ells seek damages from Mr. Moss and Builda-Vision for the negligent construction of the House. Plaintiffs argue that the "builder or builders of the [House]" violated their duty to the Ells to construct the House in a good and workmanlike manner and that they were damaged as a result of the breach of that duty. Plaintiffs argue that Mr. Moss was the builder of the House. Even if Builda-Vision built the House, argue the Plaintiffs, the Court should "pierce the corporate veil and hold Mr. Moss personally liable." Plaintiffs' Closing Argument at 5.

Defendants contend that the House was built by Builda-Vision, not Mr. Moss. The Defendants further argue that any recovery by the Ells under Count I against Builda-Vision is barred by the Statute of Repose, Code § 8.01-250. That section provides, in part:

> No action to recover for any injury to property, real or personal . . . arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance of furnishing of such services and construction.

Va. Code Ann. § 8.01-250 (Repl. Vol. 1992).

Determination of whether the Ells are entitled to recovery under Count I requires the Court first to determine who constructed the House and when the construction of the House was completed.

The evidence supports Mr. Moss's contentions that the House was constructed by Builda-Vision. Construction began in 1983. The bulk of the construction was completed by the summer of 1984, but significant electrical and mechanical work continued into 1986. Fairfax County did not issue a nonresidential use permit (i.e., a certificate of occupancy) until 1986. For the purpose of calculating the five-year period of the Statute of

Repose, the time period commences with the completion of the entire project. *See Federal Reserve Bank v. Wright*, 392 F. Supp. 1126 (E.D. Va. 1975). Therefore, the Statute of Repose commenced with the completion of the House in 1986 as evidenced by the issuance of the nonresidential use permit. The five-year period of the Statute of Repose had not expired when suit was first filed in 1989.

Defendants next argue that the Plaintiffs cannot recover from Builda-Vision under Count I because there is no privity between the Plaintiffs and Builda-Vision and the Plaintiffs have suffered economic losses. *See Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419 (1988).

The Plaintiffs "freely admit that they were not in privity with Builda-Vision." Plaintiffs' Closing Argument at 12. The Plaintiffs contend, however, that they were in privity with Mr. Moss and seek to recover from him.

Count I is based on a builder's liability. The Court has found that the House was built by Builda-Vision, which in turn sold the House to Casa Corporation. Plaintiffs urge that the Court "pierce the corporate veil" and hold Mr. Moss responsible for the actions and omissions of Builda-Vision and Casa Corporation. While evidence was adduced that Mr. Moss was far from scrupulous in observing the corporate formalities for the two corporations, he does not thereby lose the benefit of the corporate form. To pierce the corporate veil in Virginia is an extraordinary remedy. It must be shown both that the corporation serves as the "adjunct, creature, instrumentality, device, stooge, or dummy" of the individual or entity sought to be held liable and that the corporation "is used to defeat public convenience, justify wrongs, protect fraud or crime of the other." *Beale v. Kappa Alpha Order*, 192 Va. 382 (1951).

In the case at bar, the Plaintiffs argue that Mr. Moss used Casa Corporation and Builda-Vision to defraud the Plaintiffs in connection with the purchase of the Property. Plaintiffs claim that Mr. Moss stated that he built the House and that he would stand behind the House, yet, when problems arose, he hid behind the corporate form. Plaintiffs acknowledge that "Virginia cases have consistently emphasized that when one knows that one is dealing with a corporation, limited liability is to be expected." Plaintiffs' Closing Argument at 15. *See, e.g., Garrett v. Ancarrow Marine, Inc.*, 211 Va. 755 (1971). Nonetheless, Plaintiffs insist that they thought all along that they were dealing with Mr. Moss, that they had never heard of Builda-Vision and that they thought Casa Corporation was used by Mr. Moss only to facilitate the transfer of the House.

The Defendants respond that the Ells knew that they were dealing with a corporation. They initially contacted Mr. Moss in his capacity as a real estate broker operating as Randall Enterprises, Inc., and using the trade name Chesterbrook Realty. They entered into a contract with Casa Corporation. They signed a contract to acquire the Property by acquiring all of the stock of Casa Corporation. Builda-Vision[3] was the record owner of the Property during the period of construction (1983 to 1986), a fact easily discernable by an examination of the chain of title to the Property. Defendants' Closing Argument at 8.

The Court agrees with the Defendants that the Ells have not satisfied the second prong of the *Beale* test. There is no evidence that Mr. Moss used Casa Corporation "to defeat public convenience, justify wrongs, protect fraud or crime of the other." Instead, the evidence supports Mr. Moss's contention that he was a residential builder of long standing who used a variety of corporations and other business entities to manage his various enterprises, a fact that was known to the Ells.

The Court finds that the Plaintiffs are not entitled to recover under Count I both because they were not in privity with the builder and because there is an insufficient basis for the Court to pierce the corporate veil of Casa Corporation and/or Builda-Vision. For the foregoing reasons, the Court finds in favor of the Defendants on Count I.

### Count II: Breach of Statutory Warranty

In Count II, the Ells seek damages against Mr. Moss for breach of the statutory warranty contained in Va. Code Ann. § 55-70.1.[4] That section provides, in pertinent part:

> A. In every contract for the sale of a new dwelling, the vendor shall be held to warrant to the vendee that, at the time of the transfer of the record title or the vendee's taking possession, whichever occurs first, the dwelling with all of its fixtures is, to the best of the actual knowledge of the vendor or his agents, sufficiently (i) free from structural defects so as to pass without objection in the trade, and (ii) constructed in a workmanlike manner so as to pass without objection in the trade.

---

[3] Builda-Vision was not a "one man" corporation. Mr. Moss owned a 50% interest in Builda-Vision, the other 50% was owned by James Phillips, Jr., who testified at trial.

[4] Of course, in order to find against Mr. Moss on Count II of the Bill of Complaint, the Court would have to pierce the corporate veil of Casa Corporation.

14

B. In addition, in every contract for the sale of a new dwelling, the vendor, if he is in the business of building or selling such dwellings, shall be held to warrant to the vendee that, at the time of the transfer of record title or the vendee's taking possession, whichever occurs first, the dwelling, together with all its fixtures is sufficiently (i) free from structural defects so as to pass without objection in the trade, (ii) constructed in a workmanlike manner so as to pass without objection in the trade, and (iii) fit for habitation.

Va. Code Ann. § 55-70.1 (Cum. Supp. 1994). "Structural defects" are defined by the statute to be "defects which reduce the stability or safety of the structure below accepted standards or which reduce the normal use thereof." Code § 55-70.1(F).

The implied warranty of Code § 55-70.1 extends for one year from the date of record transfer of record title or the vendee's taking possession, whichever occurs first. The warranty for foundations under Code § 55-70.1(B) extends for five years. Any action for a breach of the warranties must be brought within two years of the breach. Code § 55-70.1(E).

Plaintiffs contend that it is undisputed that the House was not constructed in a good and workmanlike manner, such as to pass without objection in the trade. Furthermore, argue the Plaintiffs, the defects were clearly "structural defects" within the meaning of Code § 55-70.1(F); the House was condemned for a time, and the Ells and their three children had to seek shelter elsewhere while the repairs were made.

The Defendants assert that Code § 55-70.1 only applies to defects that manifest themselves in the first year after transfer of title or the vendee's occupancy, whichever occurs earlier. Thereafter, the vendee has two years from the time the defect manifests itself to bring suit. Therefore, the statute does not apply to the facts of this case because the defects only became apparent two and one-half years after the Plaintiffs first occupied the House. Defendants' Closing Argument at 13. Alternatively, Defendants argue that the warranty, if it applied in this case, was breached on the first day of the Plaintiffs' occupancy. Thereafter, according to the Defendants, the Plaintiffs had two years to bring suit. In this case, suit was brought over two and one-half years after the Plaintiffs first occupied the Property. Thus, the cause of action for breach of statutory warranty is time-barred.

Plaintiffs contend that the warranty applies to latent defects that do not manifest themselves in the first year, so long as the vendee proves that the defects existed during that year. Thereafter, according to the Plaintiffs, the

vendee has two years from the expiration of the warranty period to bring suit. Plaintiffs contend that the statute provides for a "continuing covenant" by the vendor that is breached each day of the warranty period that the dwelling contains a defect, whether or not that defect has manifested itself. Hence, Plaintiffs argue that the House was structurally defective on February 22, 1987, when the Ells took occupancy. The House was still defective on February 21, 1988, when the warranty period expired, although the defects did not become apparent until May, 1989. Nevertheless, the Plaintiffs brought suit on December 27, 1989, within two years of the expiration of the warranty period on February 21, 1988. Plaintiffs' Closing Argument at 6, 17.

The Court agrees with the Defendants' alternative argument regarding the proper construction of Code § 55-70.1. The Plaintiffs are able to cite no Virginia authority in support of their proposition that the statute creates a one-year "continuing covenant" by the vendor of a new dwelling that the structure is free from defect that is breached each and every day of the one-year period for latent defects that do not manifest themselves until after the first year. Of course, the statute is in derogation of the common law rule of *caveat emptor* and must be strictly construed. The legislature created a narrow exception to *caveat emptor*, under which the vendor of a new dwelling is responsible for structural defects (whether latent or patent) that exist on the day of the transfer of title or the vendee's occupancy, or that manifest themselves within one year; thereafter, the vendee has two years to bring suit. For defects that remain latent throughout the one-year period, as in this case, the breach occurs on the earlier to occur of the transfer of title or the first day that the vendee occupies the dwelling, and suit must be brought within two years of that date. To accept Plaintiffs' interpretation of the statute of limitations would in essence extend the warranty period under Code § 55-70.1 to three years, provided that the vendee filed suit before the expiration of the three-year period. This result was clearly not intended by the legislature in enacting Code § 55-70.1. In this case, the defect existed on the day the Plaintiffs first occupied the House. Therefore, the warranty (assuming it applied) was breached on that day. Accordingly, the Plaintiffs had two years from February 22, 1987 (the date of first occupancy) to bring suit. Count II, which was brought on December 27, 1989, is therefore time-barred.

The Defendants argue further that the Ells are not entitled to the protections of the statutory warranty of § 55-70.1 because the contract (Plaintiffs' Ex. # 11) was not a "contract for the sale of a new dwelling."

Instead, it was a contract for the sale and acquisition of Mr. Moss's stock interest in Casa Corporation. The Defendants argue that the Plaintiffs having chosen the benefits of acquiring the House by means of the acquisition of the stock of Casa Corporation, they cannot now reject that form when it no longer proves convenient and recast the transaction as the acquisition of the fee interest in the Property. Defendants' Closing Argument at 6-7.

The Defendants contend that even if the statutory warranties applied to the Ells's acquisition of the Property, the Ells have failed to sue the proper warrantor, Casa Corporation. When the Ells took occupancy of the Property in February of 1987, Casa Corporation was the record owner. Accordingly, according to the Defendants, Casa Corporation was the "vendor" under the statute who warranted the Property. The Defendants contend that the transfer of the title to the Property took place when Casa Corporation deeded the Property to the Ells by Deed of Gift recorded in April, 1988. Again, the Defendants contend, the "vendor" under Code § 55-70.1 would be Casa Corporation. Casa Corporation is not a defendant in this action. Mr. Moss is the only defendant named in Count II. For the reasons stated above in the discussion of Count I, the Court declines to pierce the corporate veil and hold Mr. Moss responsible for the warranties, if any, of Casa Corporation.

The Court agrees with the Defendants that the Plaintiffs' claim under Count II for breach of the statutory warranties for the construction of a new dwelling must fail because the contract in question was not a "contract for the sale of a new dwelling" as that term is used in Code § 55-70.1. The Ells enjoyed many benefits under the form of the transaction that they chose: they were able to afford a house that was at that time above their means because, by acquiring the stock in Casa Corporation, they avoided having to qualify for a new mortgage (and pay the costs and points associated with a new mortgage), and they avoided paying the recording taxes on the deed and financing documents (except for the small second trust taken back by Mr. and Mrs. Moss) which would accompany the purchase of a $480,000.00 house with new financing. The Ells's testimony that they did not understand that they were acquiring the stock of Casa Corporation rather than the fee interest in the Property was not entirely credible. Mr. Ell is a practicing attorney. Prior to leaving the paid work force to raise her children, Mrs. Scott-Ell worked as a paralegal. At closing, Mr. Ell signed the promissory note and second deed of trust in his capacity as president of Casa Corporation. After closing, they opened a bank account in the name of Casa Corporation and paid their mortgages

from that account for over a year. When they sought to refinance their mortgages, they signed the Deed of Gift from Casa Corporation to themselves in their individual capacities. The Court has no doubt that the Ells did not realize that a detriment to the form of the transaction they chose was that they would not be entitled to the statutory warranty under Code § 55-70.1, nonetheless, that result is unavoidable.

For the foregoing reasons, the Court finds in favor of the Defendants on Count II.

### Count III: Negligent Failure to Disclose Dangerous Condition

Count III seeks damages from Mr. Moss and Builda-Vision for failing to disclose to the Ells that dangerous condition in the House. Plaintiffs argue that Defendants knew or should have known about the improper installation of drainpipes, downspouts, and faulty compaction of soil. Plaintiffs candidly concede that "this is the weakest count against defendants." Plaintiffs' Closing Argument at 7.

As discussed in greater detail below in ruling on Count IV, the Court finds that there is no evidence that either Builda-Vision or Mr. Moss knew of the faulty construction of the drainage system, the improper soil compaction, or the improper downspout installation at the time of the closing. They cannot be liable for nondisclosure of a condition about which they knew nothing. There is no evidence that either Mr. Moss or Builda-Vision attempted to conceal the defects from the Ells. Accordingly, the Court finds in favor of the Defendants on Count III.

### Count IV: Fraud (Actual and Constructive)

Count IV seeks damages from Mr. Moss for fraud as a result of statements he made to them to induce them to purchase the House. According to the Ells, Mr. Moss told them that he built the House, that it was a well-built house, that the House came with a one-year builder's warranty, and that he would "stand behind" the House. According to the Ells, each of these statements proved false.

The Defendants first claim that the Plaintiffs have failed to plead and prove fraud. In Count IV of their Bill of Complaint, the Plaintiffs alleged that Mr. Moss "concealed material latent defects" in the Property from the Ells, ¶ 60, that Mr. Moss knew or should have known of such latent defects, ¶ 61, that at the time of the sale, the defects were not known to the

Ells nor discoverable by the exercise of reasonable diligence, ¶ 62, that based on Mr. Moss's representations, the Ells "relied and assumed that no such latent defects existed and acted to their detriment in purchasing the [House]," ¶ 63, that as a result of the "concealment or nondisclosure of said latent defects," the Ells were damaged, ¶ 64.

Defendants argue that nowhere in Count IV do the Plaintiffs plead that the basis of their fraud count is that Mr. Moss said that he built the house, that it was a well-built house, that the House came with a one-year warranty, and that he would "stand behind" the House. Defendants argue that that theory of recovery evolved only at trial. Those allegations were, however, contained in paragraph 23 of the Bill of Complaint, which was incorporated by reference into Count IV.

It is helpful to begin the analysis of Count IV by revisiting familiar principles of Virginia law.

> One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with the intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it. However, as with actual fraud, the elements of constructive fraud also must be proved by clear and convincing evidence.

*Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148 (1994) (citations omitted).

The first allegation of a fraudulent representation is Mr. Moss's statement that "he built the house."[5] Although the Plaintiffs' claim that they would not have bought the house if they knew that it was built by Builda-Vision rather than Mr. Moss, the Court is not persuaded that the statement that Mr. Moss built the House was material to the Plaintiffs' purchase of the Property.[6]

---

[5] Mr. Moss denies making any such statement. At trial, two neighbors testified that Mr. Moss told them that he built the Plaintiffs' House.

[6] There was no evidence introduced, for example, that the Plaintiffs investigated Mr. Moss's financial standing in order to determine if he had the wherewithal to back up the

The second statement which is alleged to be fraudulent is that the House was "well built." Plaintiff cites a number of cases from outside of Virginia that hold that a statement that a house is "well built" might be the basis of an action for fraud and is not a statement of mere opinion or sales puffery, which is not actionable. *Norman Properties v. Bozman*, 557 So. 2d 1265 (Ala. 1990); *Hammaker v. Lowe*, 261 P.2d 129 (N.M. 1953); *Culver v. Avery*, 126 N.W. 439 (Mich. 1910); *but see Williamson v. Realty Champion*, 551 So. 2d 1000 (Ala. 1989) (statement that house is "very well built" is a statement of opinion and not evidence of fraud).

The *Norman Properties* case is illustrative. In that case, the Alabama Supreme Court held that the statement that a property was "well-built" might be evidence of fraud if made "while knowing that it was not." 557 So. 2d at 1268. In this case, there is no evidence that Mr. Moss was aware of the deficiencies in the construction in the House when he made the statement that the House was well built. Accordingly, under the facts of this case, the Court finds that the statement that the House was well built, made when Mr. Moss had no knowledge that the statement was not true, cannot be the basis for recovery in fraud.

The next allegedly fraudulent statement was that the House had a one-year builder's warranty. The evidence is not entirely clear as to when this statement was made; it was some time during the several showings of the Property to the Ells preceding the closing. If the statement was made before the structure of the transaction was changed to an acquisition of the stock of Casa Corporation (in early January, 1987), it was then a true statement. If it occurred after the transaction was restructured as a stock acquisition, it was no longer a true statement, but there is no evidence that Mr. Moss knew that the restructuring of the sale would result in the statutory warranties being unavailable to the Ells.

The next statement alleged to be fraudulent was that Mr. Moss would stand behind the warranty. The evidence adduced at trial was that Mr. Moss thought that the House was covered by a one-year builder's warranty and that, in fact, if anything did go wrong with the House during the first year of the Ells's occupancy, he fixed it. He thought the warranty applied

---

builder's warranty that they were expecting to receive. The Ells certainly did not retreat from the transaction when they learned that the Property was titled in the name of Casa Corporation, nor did that fact cause them to inquire further into Mr. Moss's business or financial standing. In short, the Court finds that it was not material to the Plaintiffs whether Mr. Moss built the House, or whether a corporation in which he was a principal built the House.

to problems that manifested themselves within the first year. When the structural defects caused by the improper drainage system became manifest in May, 1989, over two years after the closing, he disavowed any responsibility. The Plaintiffs have not shown that when Mr. Moss made the statement that he would stand behind the House, he had a present intent not to perform his promise. In fact, he did perform his promise for the first year. *See Boykin v. Hermitage Realty*, 234 Va. 26 (1987). It appears that the parties have a dispute about the scope and duration of Mr. Moss's promise to stand behind the House, but the Court cannot say that the statement was untrue when made.

For the foregoing reasons, the Court finds that the Plaintiffs have failed to prove fraud by Mr. Moss. Accordingly, the Court finds in favor of Mr. Moss on Count IV.